DECISION ON OBJECTIONS TO THE MAGISTRATE'S DECISION
{¶ 1} Relator, Rachelle R. Hord, has requested a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order setting her average weekly wage ("AWW") at $57.21 and to enter an order setting her AWW in accordance with the "special circumstances" provision of R.C. 4123.61.
 {¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, this case was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In his decision, the magistrate found that the commission did not abuse its discretion in calculating relator's AWW, and recommended that this court deny the requested writ of mandamus.
 {¶ 3} Relator has filed objections to the magistrate's decision as follows:
1. A key argument advanced by Relator is that, as a wife and mother, she has been treated with less regard and consideration than a common felon. State, ex rel. Sutherland v. Indus. Comm. September 25, 1986,(Franklin Appeal No. 85AP-866 (unpublished); State ex rel. ExelLogistics, Inc. v. Indus. Comm., 2004-Ohio-3594. In both of these cases, prison time was considered to be a special circumstance for purposes of recalculating the average weekly wage. A conscious choice to break the law should not be elevated above a conscious choice to raise a family. The Magistrate completely and absolutely disregarded, without comment, this compelling due process, equal protection, and fundamental fairness position advanced by Relator. [sic]
2. The Magistrate states that special circumstances has generally beenconfined to uncommon situations. Magistrate's Report Page 5. However, the cases cited on special circumstances indicate to the contrary. In addition to the cases involving felons, one case deals with a person who started a business and initially lost money, Smith v. Indus. Comm(1986), 25 Ohio St.3d 25, while the other case dealt with an individual who was forced back to work due to a financial reversal. Riley v. Indus.Comm. (1983), 9 Ohio App.3d 71. None of these situations are uncommon. [sic]
3. Relator submits that the Magistrate misapplied the law when he refused impute the value of Relator's household services while at the same time approving of the Commission's speculation as to future earnings beyond the date of injury. Relator presented solid and credible forensic economic data as to the value of her services whereas the Commission projected future earnings based upon a simple averaging of her prior full-time and part-time wages. Relator strongly asserts that she is entitled to have her wage and earnings evidence considered; there is no indication that the Commission did so. [sic]
 {¶ 4} Relator was employed in a seasonal job as "plant transplanter" at a nursery operated by respondent Veronica Combs, dba Combs Greenhouse ("Combs"). On April 30, 2001, relator sustained an industrial injury while employed at Combs, and an industrial claim was allowed for "sprain of neck; C5-C6 and C6-C7 herniated disc; right impingement syndrome; tear right supraspinatus." Relator's hourly wage was $5.50 per hour. Relator began employment at Combs on February 11, 2001, and had she not been injured on April 30, 2001, would have continued employment through the end of June or early July. During three of the twelve weeks that she worked, relator worked a 40-hour week.
 {¶ 5} During the year prior to her injury, relator was also employed for two weeks cleaning apartments where she resided. She earned $120 and $160 respectively during the two weeks worked.
 {¶ 6} On October 17, 2003, relator moved that her AWW be calculated. Specifically, relator wanted her AWW adjusted to $268.41 based on the value of household services provided by her while staying at home caring for her family prior to her April 30, 2001 injury. Following a hearing, the district hearing officer ("DHO") issued an order denying relator's request to adjust her AWW. Specifically, the DHO found that "choosing to be a housewife [is not] a special circumstance as it is not found to be an uncommon situation. The claimant's lack of earnings over the majority of [the] year was by the claimant's choice to remain at home and is not found to amount to a special circumstance to merit a different method of calculation."
 {¶ 7} Relator appealed the DHO's order. Following a hearing, a staff hearing officer ("SHO") issued an order agreeing that relator's "decision to be a stay-at-home mom, while admirable, is a [conscious] choice, not a special circumstance of unemployment beyond her control." Relator's AWW was calculated as follows:
[T]he claimant worked for this employer a total of 293.75 hours in 12 weeks, thereby averaging 24.5 hours per week. Multiplied by her hourly rate of $5.50, she earned, on average, $134.75 per week. Extrapolating that figure out an additional 8 weeks (for a total of 20 weeks), claimant would have earned $2695.00 with this employer. Add the $280.00 from a prior employer generates a total income of $2975.00, which, when divided by 52, yields a result (average weekly wage) of $57.21.
(See stipulation of record, exhibit 3.)
 {¶ 8} An order refusing relator's administrative appeal from the SHO's order was mailed to relator on March 2, 2004. This mandamus action followed.
 {¶ 9} R.C. 4123.61 states in part:
* * * [T]he claimant's * * * average weekly wage for the year preceding the injury * * * is the weekly wage upon which compensation shall be based. In ascertaining the average weekly wage for the year previous to the injury, * * * any period of unemployment due to sickness, industrial depression, strike, lockout, or other cause beyond the employee's control shall be eliminated.
In cases where there are special circumstances under which the average weekly wage cannot justly be determined by applying this section, the administrator of workers' compensation, in determining the average weekly wage in such cases, shall use such method as will enable him to do substantial justice to the claimants.
 {¶ 10} The statute provides a standard AWW calculation that is to be used in all but the most exceptional cases. State ex rel. Kidwell v.Indus. Comm., Franklin App. No. 02AP-940, 2003-Ohio-4509. As noted by this court, "the calculation involving `special circumstances' is only applicable to unusual or exceptional cases," and "two general considerations dominate: (1) that the AWW must do substantial justice; and (2) the calculation should not result in a windfall." Id. at ¶ 22 quoting State ex rel. Major v. Indus. Comm., Franklin App. No. 01AP-833, 2002-Ohio-2224, ¶ 16.
 {¶ 11} In the instant case, the commission found that relator's choice to be a "stay-at-home mom" was a conscious choice, and thus, did not constitute a "special circumstance" for purposes of R.C. 4123.61. It is relator's position that the commission's determination treats her with less regard and consideration than a common felon. In support of her position, relator cites two cases, State, ex rel. Sutherland v. Indus.Comm. (September 25, 1986), Franklin App. No. 85AP-866 and State ex rel.Exel Logistics, Inc. v. Indus. Comm., Franklin App. 03AP-456, 2004-Ohio-394, in which prison time was considered to be a special circumstance for purposes of calculating the AWW. In each case, however, the court found that the period of unemployment was due to causes beyond the relator's control. In the instant case, the commission found that the relator's period of unemployment was due to her conscious choice to remain at home with her family. The facts of this case are not analogous to those in which a period of incarceration was found to be a special circumstance. Relator argues that this determination is unfair; however, this is a court of law, and in interpreting the law, we find that the commission did not abuse its discretion in determining that relator's circumstances do not warrant a calculation in accordance with the "special circumstances" provision of R.C. 4123.61.
 {¶ 12} In relator's second objection, she argues that contrary to the magistrate's conclusion, the case law concerning "special circumstances" does not indicate that the "special circumstances" have been confined to uncommon situations. As discussed previously, this court has held that the "special circumstances" calculation is only applicable to unusual or exceptional circumstances. Kidwell, supra. Within its discretion, the commission is to determine whether a "special circumstance" exists so as to warrant a deviation from the standard formula. State ex rel. Cawthornv. Indus. Comm. (1997), 78 Ohio St.3d 112. The issue before this court is to decide whether the commission's determination is contrary to law or otherwise a gross abuse of discretion. There is no evidence of either. As argued by the commission, most persons provide some type of services to a family in addition to the work they performed when injured. In today's society, relator's situation is not unusual, it is a conscious choice, not beyond relator's control, and we find no evidence that the commission abused its discretion in so finding.
 {¶ 13} Relator's third objection relates to the magistrate's refusal to impute the value of relator's household services and approval of the commission's speculation as to future earnings beyond the date of injury. However, as the magistrate reasoned, the AWW should approximate the average amount that the claimant would have received had the claimant continued working after the injury as the claimant worked prior to the injury. State ex rel. Erkard v. Indus. Comm. (1988), 55 Ohio App.3d 186. The commission's calculation was designed to find a fair basis for award of future compensation. As the magistrate concluded, the SHO properly divided the total income by 52 weeks, because to divide by only the number of weeks worked would create a windfall.
 {¶ 14} Relator's second argument relating to the commissions' failure to consider the monetary value of her household services in determining her AWW also lacks merit. As recognized by the magistrate, the use of the word "wage" in R.C. 4123.61 constitutes monetary remuneration by an employer for labor or services. As stated by the magistrate, "[w]hile no one doubts that household services have value, it is undisputed that relator did not receive monetary remuneration from an employer for the household services she performed at home for the family." (See Magistrate's Decision, Appendix A, at ¶ 45.) As such, the value of household services cannot be included in the AWW calculation.
 {¶ 15} Following an independent review of the matter, we find that the magistrate has properly determined the facts and applied the appropriate law. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we deny the requested writ of mandamus.
Objections overruled; writ denied.
Klatt and French, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Rachelle R. Hord, :
 :
 Relator, :
 :
v. : No. 04AP-617
 :
Veronica Combs, dba Combs : (REGULAR CALENDAR)
Greenhouse and Industrial :
Commission of Ohio, :
 :
Respondents. :

 MAGISTRATE'S DECISION Rendered on December 9, 2004 Young, Reverman Mazzei Co., L.P.A., Martin M. Young, and Stephen S.Mazzei, for relator.
Jim Petro, Attorney General, and Gerald H. Waterman, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 16} In this original action, relator, Rachelle R. Hord, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order setting her average weekly wage ("AWW") at $57.21 and to enter an order setting AWW in accordance with the "special circumstances" provision of R.C. 4123.61.
 {¶ 17} Findings of Fact:
 {¶ 18} 1. On April 30, 2001, relator sustained an industrial injury while employed in a seasonal job as "plant transplanter" at a nursery operated by respondent Veronica Combs, dba Combs Greenhouse ("Combs"). The industrial claim is allowed for: "sprain of neck; C5-C6 and C6-C7 herniated disc; right impingement syndrome; tear right supraspinatus," and is assigned claim number 01-365707.
 {¶ 19} 2. Relator's hourly wage at Combs was $5.50 per hour. She began her employment there on February 11, 2001. Had she not been injured on April 30, 2001, she would have continued the seasonal employment through the end of June or early July. While the Combs job was generally part-time, during three of the 12 weeks that she worked, relator worked a 40-hour week.
 {¶ 20} 3. During the year prior to her date of injury, relator was also employed for two weeks cleaning apartments at Timber Ridge Apartments where she resided. Timber Ridge pay stubs show that relator earned $120 and $160 respectively during the two weeks worked.
 {¶ 21} 4. During the remaining weeks in the year prior to her date of injury, relator was unemployed.
 {¶ 22} 5. On October 17, 2003, relator moved that her AWW be calculated. In support, relator submitted her affidavit stating:
* * * From on and before April 30, 2000, I was staying at home caring for my family. I maintained our home and performed all necessary household chores and generally cared for my family. I estimate that my household job duties required at least 40 to 60 hours per week, and these duties were performed 7 days per week and never seemed to stop.
* * * At the time of my injury on April 30, 2001, I was 32 years old and my date of birth is June 18, 1968. I have a 9th grade education. I estimate that the yearly value of my household services for that portion of the year prior to my date of injury during which I was not working to be $13,486.00. I was in this status for 41 weeks. The pro-rated net value for this period is $10,633.19. I estimate the value of my services for the period of time that I was working for Veronica Combs to be $8,275.00 per year, with a pro-rated net total of $1,750.48. For the entire year prior to my injury, I estimate the value of my household work to be at least $12,383.67. These figures have been rounded off to the nearest whole dollar and are based upon Table 6, Page 39 of Which Estimates ofHousehold Production are Best?, Journal of Forensic Economics 4(1), 1990, Douglas, Kenney, and Miller, a copy of which is attached to and incorporated by reference into this affidavit.
* * *
* * * At the time that I obtained employment with Veronica Combs it was my intent and desire to obtain full time employment.
(Emphasis sic.)
 {¶ 23} 6. Following a December 11, 2003 hearing, a district hearing officer ("DHO") issued an order stating:
The claimant's request to adjust average weekly wage to $268.41 based on the claimant's affidavit and due to a finding of special circumstances is denied. The DHO does not find special circumstances exist to merit use of an alternative method of calculation per R.C. 4123.61. The claimant was a seasonal employee when she was injured according to Ms. Combs; the employer, testimony at hearing. The position as a plant transplanter at a nursery would end in early July of each year. The claimant started the position 02/11/2001 and would have ended the position in early July of 2001 but for the industrial injury of 04/30/2001. The claimant worked part time with the exception of 3 weeks when the claimant worked 40 hours a week. The claimant worked 2 weeks during the year prior to her industrial injury also cleaning apartments at the apartment complex where she lives. According to claimant's testimony at hearing and according to the payslips from Timber Ridge Apartments, the apartment cleaning position was sporadic. The claimant remained a housewife for the remainder of the weeks. The DHO does not find choosing to be a housewife to be a special circumstance as it is not found to be an uncommon situation. The claimant's lack of earnings over the majority of [the] year was by the claimant's choice to remain at home and is not found to amount to a special circumstance to merit a different method of calculation. Based on the claimant's testimony at hearing and the facts set forth above, the DHO denies the claimant's request to increase the average weekly wage to $268.41.
The DHO relies on the 2000 Tax return, the pay slips from the employer and from Timber Ridge Apartments, and claimant's and employer testimony at hearing.
 {¶ 24} 7. Relator administratively appealed the DHO's order of December 11, 2003.
 {¶ 25} 8. Following a February 5, 2004 hearing, a staff hearing officer ("SHO") issued an order stating:
The average weekly wage is ordered set at $57.21 based on the following wage information and legal reasoning: the SHO agrees with the reasoning of the DHO in finding that the claimant's decision to be a stay-at-home mom, while admirable, is a [conscious] choice, not a special circumstance of unemployment beyond her control. Therefore, no weeks can be properly excluded from the calculation. However, but for the injury, claimant would have worked until the end of June. As the idea of the average weekly wage is to establish an amount to make one whole, i.e. set a figure which reflects what an individual would have earned but for the injury, the SHO finds that the claimant worked for this employer a total of 293.75 hours in 12 weeks, thereby averaging 24.5 hours per week. Multiplied by her hourly rate of $5.50, she earned, on average, $134.75 per week. Extrapolating that figure out an additional 8 weeks (for a total of 20 weeks), claimant would have earned $2695.00 with this employer. Add the $280.00 from a prior employer generates a total income of $2975.00, which, when divided by 52, yields a result (average weekly wage) of $57.21.
The remainder of the DHO order is affirmed. This order is based on claimant's pay stubs. All relevant evidence was reviewed and considered in reaching this decision.
 {¶ 26} 9. On March 2, 2004, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of February 5, 2004.
 {¶ 27} 10. On June 17, 2004, relator, Rochelle R. Hord, filed this mandamus action.
 {¶ 28} Conclusions of Law:
 {¶ 29} Relator argues in the alternative that the commission abused its discretion in calculating AWW by: (1) including the weeks of unemployment; or (2) failing to determine and include the monetary value of her household services in the year prior to her date of injury.
 {¶ 30} Finding no abuse of discretion, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 31} R.C. 4123.61 states in part:
* * * [T]he claimant's * * * average weekly wage for the year preceding the injury * * * is the weekly wage upon which compensation shall be based. In ascertaining the average weekly wage for the year previous to the injury, * * * any period of unemployment due to sickness, industrial depression, strike, lockout, or other cause beyond the employee's control shall be eliminated.
In cases where there are special circumstances under which the average weekly wage cannot justly be determined by applying this section, the administrator of workers' compensation, in determining the average weekly wage in such cases, shall use such method as will enable him to do substantial justice to the claimants.
 {¶ 32} "Special circumstances" is not defined by the statute, but special circumstances have generally been confined to uncommon situations. State ex rel. Wireman v. Indus. Comm. (1990),49 Ohio St.3d 286, 288. Moreover, special circumstances can be invoked only if the standard calculation yields a result that is substantially unjust. State ex rel. Cawthorn v. Indus. Comm. (1997), 78 Ohio St.3d 112,115; State ex rel. Clark v. Indus. Comm. (1994), 69 Ohio St.3d 563, 566.
 {¶ 33} AWW is designed to find a fair basis for award of future compensation. State ex rel. Riley v. Indus. Comm. (1983),9 Ohio App.3d 71, 73. The AWW should approximate the average amount that the claimant would have received had he continued working after the injury as he had before the injury. State ex rel. Erkard v. Indus. Comm. (1988), 55 Ohio App.3d 186, 188.
 {¶ 34} In calculating AWW, two considerations dominate. First, the AWW must do substantial justice to the claimant. Second, it should not provide a windfall. Wireman, supra, at 287.
 {¶ 35} Here, the SHO did not apply the standard calculation in determining AWW. Instead, from relator's earnings at Combs during the 12 weeks she worked, the SHO projected relator's earnings during the remaining period of the seasonal job to determine total earnings had relator not been injured. The SHO determined that relator would have worked 20 weeks at Combs had she not been injured. Because relator's average weekly earnings at Combs during the 12 weeks worked was $134.75, the SHO multiplied 20 weeks times the weekly wage. (20 x $134.75 = $2,695.) Based on the two weeks that relator cleaned apartments at Timber Ridge, the SHO added $280 to the total Combs earnings (actual and imputed).
 {¶ 36} Relator appeared with her counsel at both hearings. The finding that the seasonal job at Combs would have ended at the end of June or early July was apparently based upon relator's hearing testimony. There is no dispute here that the seasonal job at Combs was to end at the end of June or early July. In fact, relator does not dispute the SHO's finding that relator would have earned $2,695 at Combs had she not been injured and thus had worked until the job ended.
 {¶ 37} It is thus clear that the SHO did not apply the standard calculation in determining AWW. The SHO, in effect, devised a "special circumstances" calculation, in which relator's earnings at Combs were projected to the end of the seasonal employment.
 {¶ 38} In the magistrate's view, the SHO's calculation of AWW was designed to find a fair basis for award of future compensation. The AWW of $57.21 approximates the average amount that relator would have received had she continued working after the injury until the seasonal job ended. Riley; Erkard, supra. The AWW of $57.21 fairly reflects relator's average weekly earnings on an annualized basis.
 {¶ 39} The SHO properly divided the total income of $2,975 (actual and projected) by 52 weeks. To divide total income by the number of week worked (actual and projected) would create a windfall to relator.
 {¶ 40} The critical factor in this case compelling a denominator of 52 is the seasonal nature of the Combs job. To use a denominator equal to the weeks worked (actual and projected) would imply that relator intended to work beyond the seasonal job at Combs. There is no evidence in the record to support a finding that relator intended to find other employment beyond the Combs job.
 {¶ 41} At oral argument, relator's counsel disagreed with the proposition that there is no evidence in the record to support a finding that relator intended to work beyond the seasonal Combs job. Relator's counsel pointed to the following portion of relator's affidavit:
* * * At the time that I obtained employment with Veronica Combs it was my intent and desire to obtain full time employment.
 {¶ 42} The magistrate disagrees that the affidavit provides some evidence upon which the commission could have found that relator intended to work beyond the seasonal Combs job. The affidavit avers that it was relator's intent to obtain "full time employment," not permanent employment or other employment beyond the Combs job. In fact, the affidavit does not address the seasonal nature of the Combs job. The seasonal nature of the job was apparently addressed during the hearing testimony as the commission's order indicates.
 {¶ 43} Relator's second argument is that the commission abused its discretion by failing to determine the monetary value of her household services during the year prior to the date of injury and to include the monetary value into a standard calculation of AWW. This argument lacks merit.
 {¶ 44} Relator's second argument is answered by the statute, R.C.4123.61, which states:
The average weekly wage of an injured employee at the time of the injury or at the time disability due to the occupational disease begins is the basis upon which to compute benefits.
 {¶ 45} Addressing R.C. 4123.61's use of the word wage, the court, inState ex rel. McDulin v. Indus. Comm. (2000), 89 Ohio St.3d 390, 392, determined that wages constitute monetary remuneration by an employer for labor or services. While no one doubts that household services have value, it is undisputed that relator did not receive monetary remuneration from an employer for the household services she performed at home for her family. Accordingly, the value of relator's household services rendered to her family during the year prior to her date of injury cannot be included in the AWW calculation.
 {¶ 46} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.