THE STATE EX REL. BAKER CONCRETE CONSTRUCTION, INC., APPELLEE,
*v.* INDUSTRIAL COMMISSION OF OHIO; KINSLER, APPELLANT.

[Cite as **State ex rel. Baker Concrete Constr., Inc. v. Indus. Comm., 102 Ohio St.3d 149, 2004-Ohio-2114.**]

(No. 2003–1242—Submitted March 15, 2004—Decided May 12, 2004.)

---

**Per Curiam.**

{¶ 1} Appellant-claimant, Edward Kinsler, was industrially injured on December 16, 1997, while employed by appellee, Baker Concrete Construction, Inc. When the time came to set claimant's average weekly wage ("AWW"), controversy arose over how to handle the 16 weeks of unemployment that followed Baker's yearly seasonal slowdown and accompanying layoffs. The claimant sought to have both the amount of unemployment compensation and the 16 weeks of unemployment excluded from the calculation. Baker urged their inclusion.

{¶ 2} An Industrial Commission district hearing officer ruled in Baker's favor:

{¶ 3} "The District Hearing Officer finds that special circumstances exist in this claim which warrant the inclusion of both the Claimant's actual earnings and unemployment in the Average Weekly Wage calculation.

{¶ 4} "Specifically, the Claimant is employed as a union construction worker. As such, the Claimant expects to work 8 months out of a year and he expects to receive unemployment compensation for 4 months out of a calendar year. The Claimant testified that this pattern repeats itself every year. The Claimant works when the weather permits and goes on unemployment during the winter months.

{¶ 5} "Accordingly, the District Hearing Officer finds that the best way to calculate the Claimant's Average Weekly Wage for the year prior to injury is to include both the Claimant's actual earnings and unemployment compensation and divide the total by 52 weeks.

{¶ 6} "The Claimant argues that the weeks during which the Claimant received unemployment compensation should be excluded from the Average Weekly Wage calculation for the reason that the Claimant was unemployed for reasons beyond his control for these weeks.

{¶ 7} "The District Hearing Officer rejects this argument because these weeks of unemployment were not beyond the Claimant's control. Specifically, the Claimant planned to go on unemployment for the winter months and has done so every year."

{¶ 8} A staff hearing officer reversed on appeal:

{¶ 9} "The average weekly wage is set at $673.04 ($24,319.58 divided by 36), based on figures supplied by counsel for the claimant. This calculation excluded 16 weeks, and the unemployment compensation paid for those weeks, due to circumstances beyond the claimant's control and the nature of the construction business. This calculation is found to provide 'substantial justice'."

{¶ 10} Further appeal was denied.

{¶ 11} Baker petitioned the Court of Appeals for Franklin County for a writ of mandamus rather than a full writ. The court of appeals issued a limited one that returned the cause to the commission. Adopting the report of its magistrate, the court found that the staff hearing officer's order failed both to adequately explain its reasoning and identify the evidence on which it relied.

{¶ 12} This cause is now before this court upon an appeal as of right.

{¶ 13} AWW is typically set by dividing the claimant's total earnings for the year preceding injury by 52. R.C. 4123.61. Periods of unemployment attributable to "sickness, industrial depression, strike, lockout, or other cause beyond the employee's control," however, must be omitted from the computation. Id.

{¶ 14} At issue is the excludability of claimant's 16 weeks of seasonal unemployment. Claimant maintains that unemployment was beyond his control as demonstrated by his receipt of Ohio Bureau of Employment Services ("OBES") benefits.[1] Baker counters that the annual, as opposed to one-time, occurrence of claimant's seasonal layoff removes it from the realm of unforeseen and hence involuntary unemployment.

{¶ 15} To date, foreseeability of job loss has not rendered seasonal unemployment voluntary. In *State ex rel. The Andersons v. Indus. Comm.* (1992), 64 Ohio St.3d 539, 597 N.E.2d 143, the claimant knew up front that his job would only last six to eight months. The employer contested exclusion of the subsequent unemployment from the AWW calculation, asserting that because claimant accepted the job knowing that he would be released at season's end, the unemployment that followed could not be considered beyond his control.

{¶ 16} The employer did not prevail. In upholding exclusion, we cited the principle of encouraging gainful employment, observing that the claimant may have taken the position because it was all that he could find.

{¶ 17} *The Andersons'* precepts obviously do not transfer seamlessly to this case. There is no evidence in this case that claimant took this job because it was the only one available. Likewise, there is no proof that claimant has stayed at this job over the years because other options did not exist. Herein lies the dilemma. It is one thing to work a seasonal job because no alternatives are present. It is perhaps another when seasonal employment becomes a pattern. At that point, it is legitimate to ask whether such employment has become a lifestyle choice.

{¶ 18} We have decisively declared that workers' compensation benefits are not intended to subsidize lifestyle choices. Over a decade ago, in *State ex rel. Pauley v. Indus. Comm.* (1990), 53 Ohio St.3d 263, 559 N.E.2d 1333, we declined to award impaired-earning-capacity benefits to a claimant who left the labor market to stay home with her children. Even where the claimant has remained in the work force, extra scrutiny is given to employment that is not regular full-time work. This now includes part-time and self-employment and, because of the potential lifestyle benefits of seasonal work, may include this new category as well. See, e.g., *State ex rel. Pepsi–Cola Bottling Co. v. Morse* (1995), 72 Ohio St.3d 210, 648 N.E.2d 827; *State ex rel. Brinkman v. Indus. Comm.* (1999), 87 Ohio St.3d 171, 718 N.E.2d 897; *State ex rel. Ooten v. Siegel Interior Specialists Co.* (1998), 84 Ohio St.3d 255, 703 N.E.2d 306.

{¶ 19} While the phrase "lifestyle choice" has been applied only to benefit eligibility and not the amount thereof, it may very well be relevant in calculating

---

1. R.C. 4141.29(A)(4)(a)(i) premises these benefits on proof that the individual is actively seeking work.

AWW. AWW cannot provide a windfall to claimants. *State ex rel. Wireman v. Indus. Comm.* (1990), 49 Ohio St.3d 286, 551 N.E.2d 1265. It follows, therefore, that if seasonal unemployment springs from a lifestyle choice, then those weeks of unemployment are not beyond a claimant's control and omitting those weeks from the AWW contradicts both the statute and case law.

{¶ 20} Determining whether a particular employment pattern is a lifestyle choice relevant to calculating a claimant's AWW is logically a question of intent, which, in turn, derives from words and actions. Here, there is no evidence on the question of intent. We know only from a claimant statement cited by the district hearing officer that claimant had grown to expect the yearly seasonal layoff.

{¶ 21} The court of appeals, speaking through its magistrate, found this statement insufficient to support a finding of intent—or lack thereof—and returned the cause to the commission for further consideration on the issue. The necessity of a return, however, should first be evaluated within the context of claimant's receipt of OBES benefits. Receipt of those benefits hinges on proof that the individual is actively seeking work. R.C. 4141.29(A)(4)(a)(i). Neither the magistrate nor the court of appeals was persuaded by this evidence, stating:

{¶ 22} "[W]here the claimant produces documents showing that he received unemployment benefits for certain weeks, the commission may accept the implicit determination by the unemployment bureau that the claimant was unable to find work for those weeks despite a good-faith search, but the commission is not bound by that implicit determination as a matter of law. In short, evidence of receiving unemployment benefits is 'some evidence' on which the commission may rely, but such evidence is not conclusive in that the commission is not required to accept that evidence as determinative of involuntary unemployment as a matter of law. The commission may or may not find it persuasive for purposes of setting the AWW."

{¶ 23} We, too, recognize the independence of the commission from the Bureau of Employment Services. A job search sufficient to satisfy OBES might not satisfy the commission. For this reason, we believe that the staff hearing officer's fleeting reference to claimant's unemployment benefits reflects a lack of analysis of the critical question of whether claimant's 16 weeks of unemployment were actually beyond his control. Accordingly, we agree with the court of appeals' decision to return the cause for further explanation pursuant to *State ex rel. Noll v. Indus. Comm.* (1991), 57 Ohio St.3d 203, 567 N.E.2d 245.

{¶ 24} The judgment of the court of appeals is affirmed.

Judgment affirmed.

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

Garvin & Hickey, L.L.C., Michael J. Hickey and Sandee E.B. Reim, for appellee.

Butkovich, Schimpf, Schimpf & Ginocchio Co., L.P.A., and Stephen P. Gast, for appellant.