DECISION
{¶ 1} In this original action, relator, RL Carriers Shared Services, L.L., seeks a writ of mandamus compelling respondent, the Industrial Commission of Ohio, to vacate its order setting the average weekly wage of respondent, Robert D. Alben ("claimant"), at $670.92, and to order the commission to re-determine claimant's average weekly wage without excluding a period when claimant was unemployed and actively seeking employment.
 {¶ 2} The matter was referred to a magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of this court. The magistrate issued a decision that includes findings of fact and conclusions of law and recommended that this court deny the requested writ of mandamus. (Attached as Appendix A.) No objection has been filed to the magistrate's decision.
 {¶ 3} Pursuant to Civ.R. 53(E)(4), the court conducted a full review of the magistrate's decision. The court finds that there is no error of law or other defect upon the face of the decision. Therefore, the court adopts the magistrate's decision. The requested writ of mandamus is denied.
Writ of mandamus denied.
Sadler and McGrath, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State ex rel. RL Carriers Shared :
Services, L.L., :
 Relator, :
v. : No. 05AP-282
Industrial Commission of Ohio : (REGULAR CALENDAR)
and Robert D. Alben, :
 Respondents. :
 MAGISTRATE'S DECISION Rendered on August 25, 2005 Reminger Reminger Co., L.P.A., and Linda Stepan, for relator.
Jim Petro, Attorney General, and Lasheyl N. Sowell, for respondent Industrial Commission of Ohio.
Schiavoni, Bush Muldowney, and Shawn Muldowney, for respondent Robert D. Alben.
 IN MANDAMUS {¶ 4} Relator, RL Carriers Shared Services, L.L., has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order setting the average weekly wage ("AWW") of respondent Robert D. Alben ("claimant") at $670.93, and to order the commission to redetermine claimant's AWW without excluding the period of unemployment pursuant to State ex rel. Baker Concrete Constr., Inc. v. Indus. Comm.,102 Ohio St.3d 149, 2004-Ohio-2114.
Findings of Fact:
 {¶ 5} 1. Claimant sustained a work-related injury on October 14, 2003, when he was involved in a motor vehicle accident. Claimant's claim has been allowed for "sprain of neck; disc herniation C5-6; right shoulder rotator cuff tear; whiplash injury neck; aggravation of degenerative joint disease cervical spine."
 {¶ 6} 2. On September 24, 2004, claimant filed a motion asking that his AWW be set at "$698.88 ($16,773.20/20 weeks worked)" and that the "remaining 28 weeks be excluded as he was unemployed and actively seeking employment."
 {¶ 7} 3. On October 4, 2004, claimant filed a motion seeking wage loss compensation.
 {¶ 8} 4. On October 12, 2004, claimant filed a motion requesting the payment of temporary total disability ("TTD") compensation.
 {¶ 9} 5. All three motions were heard before a district hearing officer ("DHO") on November 22, 2004. The DHO first addressed claimant's motion for TTD compensation and ordered TTD compensation paid from August 25, 2004 through November 22, 2004, and to continue based upon the September 21, 2004 report of Dr. Senter and evidence of claimant's recent surgery. The DHO noted further that the employer, relator herein, did not challenge the application for TTD compensation.
 {¶ 10} The DHO then addressed claimant's motion regarding his AWW and set the amount at "$429.23." The DHO explained his calculation and reasoning as follows:
* * * This figure was arrived at by totaling the earnings of the injured worker (less his unemployment benefits received) for the year prior to the date of injury and dividing by 38. ($16,310.60 divided by 38 = $429.23). Counsel for the injured worker was seeking the exclusion of as many as 28 weeks in the calculation as the injured worker was laid off from his job. Counsel for the employer argued that none of the weeks the injured worker was unemployed should be excluded on the basis that it was a lifestyle choice on the part of the injured worker.
The District Hearing Officer finds that evidence adduced at hearing establishes that the injured worker's unemployment was not entirely beyond his control and was not entirely a lifestyle choice on the part of the injured worker.
The District Hearing Officer finds that evidence adduced at hearing establishes that the injured worker's unemployment was not entirely beyond his control and was not entirely a lifestyle choice. The injured worker testified that he looked for work during the period of unemployment, but only to the extent of speaking with employees of other freight companies. He then put in applications with three employers who were offering wages higher than he was earning. He testified that he would not leave that employer unless it was for more money. The District Hearing Officer finds that as he did not continually look for work during his entire 28 week period of unemployment that to exclude all 28 weeks would be a windfall for the injured worker. Therefore, the District Hearing Officer finds that the appropriate thing to do is to exclude half of the period or 14 weeks.
The District Hearing Officer is cognizant that the injured worker's unemployment benefits should also be included for the 14 week period in question, but as the amount of these benefits was not available, they could not be considered.
 {¶ 11} The DHO then addressed claimant's motion for wage loss benefits and determined that claimant's conditions prevented him from working his regular job and limited his hours for at least a portion of the period for which the compensation was requested. The DHO found that wage loss benefits were payable from January 27 through April 10, 2004.
 {¶ 12} 6. Both relator and claimant filed appeals from the November 22, 2004 DHO order.
 {¶ 13} 7. The appeals were heard before a staff hearing officer ("SHO") on January 13, 2005. The SHO affirmed those portions of the DHO order granting TTD compensation from August 25 through November 22, 2004, as well as the payment of wage loss compensation payable from January 27 through April 10, 2004. However, the SHO vacated the prior DHO order on the issue of AWW and determined the matter as follows:
It is the order of the Staff Hearing Officer that the average weekly wage herein be set at $670.93 based upon total wages earned in the year prior to injury of $16,773.20 ($16,310.00 with the employer of record and $463.20 with former employer Russell Truckline) divided by 25 weeks worked.
Prior paid compensation is to be adjusted accordingly.
In establishing the average weekly wage, the Hearing Officer has relied upon the Injured Worker's testimony to conclude that excluding 27 weeks of unemployment is warranted under Section 4123.61 O.R.C. as the Hearing Officer specifically finds that said weeks of unemployment were beyond the Injured Worker's control and that said period of unemploy-ment from 11/01/2002 through 05/06/2003, was not a life-style choice by the Injured Worker to be unemployed.
The Hearing Officer finds that the Injured Worker was previously employed for the last 25 years as a truck driver for a company that delivered construction materials to job sites and this work was seasonal in nature in that he was usually laid off in late fall or early winter each year and then called back out to work when the weather broke in the succeeding new year. While the Hearing Officer acknowledges that for the first 24 years this type of seasonal employment may or may not very well be characterized as a life-style choice, in the year immediate [sic] prior to the injury herein, the Hearing Officer finds that the Injured Worker did not just accept his seasonal layoff as in years prior, but rather, affirmatively took the position that he needed to secure new and better employment as his current situation was no longer providing him with sufficient income to meet his bills. The Injured Worker testified that he read the newspaper want ads, networked with other drivers and visited local truck stops looking for work as a driver, albeit or a higher wage. The Injured Worker indicated he applied for positions with five separate companies during the seasonal layoff period in issue, named the potential employers at this hearing and most notably indicated, it was these very efforts that resulted in his hiring by the employer of record. Given these findings, the Hearing Officer concludes that 27 weeks of unemployment in the year prior to the injury herein, were properly excludable under Section 4123.61 O.R.C. as being a period beyond this control and during which he actually sought employment. In the alternative, the Hearing Officer concludes that the Injured Worker has established a special circumstance under Section 4123.61 O.R.C. which warrants the exclusion of these 27 weeks. That special circumstance being that after 24 years of employment, the Injured Worker made a conscious effort to make and in fact did make, a life style change, going from a seasonal type worker to a non-seasonal worker.
All evidence contained within the record was reviewed and considered.
(Emphasis sic.)
 {¶ 14} 8. Relator's appeal was refused by order of the commission mailed February 5, 2005.
 {¶ 15} 9. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 16} The only issue in this case is whether the commission abused its discretion in determining claimant's AWW. Relator argues that the commission abused its discretion by excluding claimant's weeks of seasonal unemployment from the AWW computation. Relator cites the Supreme Court of Ohio's decision in Baker, supra, and argues that claimant in the within manner, like the employee in Baker, had made a lifestyle choice to work on a seasonal basis and that excluding the period of seasonal unemployment from the AWW calculation would provide a windfall to the claimant.
 {¶ 17} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967),11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State exrel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 18} R.C. 4123.61 provides for the computation of AWW and provides, in pertinent part, as follows:
The average weekly wage of an injured employee at the time of the injury or at the time disability due to the occupational disease begins is the basis upon which to compute benefits.
* * *
* * * [T]he claimant's * * * average weekly wage for the year preceding the injury * * * begins is the weekly wage upon which compensation shall be based. In ascertaining the average weekly wage for the year previous to the injury, * * * any period of unemployment due to sickness, industrial depression, strike, lockout, or other cause beyond the employee's control shall be eliminated.
In cases where there are special circumstances under which the average weekly wage cannot justly be determined by applying this section, the administrator of workers' com-pensation, in determining the average weekly wage in such cases, shall use such method as will enable him to do substantial justice to the claimants.
 {¶ 19} In the present case, the commission applied the "special circumstances" provision of R.C. 4123.61 when it determined claimant's AWW. Specifically, based upon claimant's testimony, the commission determined that the 27 weeks of unemployment should be excluded because it was beyond claimant's control and that, even though claimant ordinarily was a seasonal employee, the 27 weeks were not a lifestyle choice in the present case because the claimant made a conscious effort to make a lifestyle change, going from a seasonal type worker to a nonseasonal worker.
 {¶ 20} In Baker, a dispute rose over how to handle the 16 weeks of the injured worker's unemployment that followed the employer's yearly seasonal slow down and accompanying layoffs. The injured worker had sought to have both the amount of unemployment compensation and the 16 weeks of unemployment excluded from the calculation. The employer argued that the injured worker was employed as a union construction worker who expected to work eight months out of the year and expected to receive unemployment compensation for four months out of each calendar year. Furthermore, the injured worker testified that this pattern repeats itself every year. The SHO excluded the 16 weeks of unemployment and the unemployment compensation paid for those weeks finding that the unemployment was due to circumstances beyond the injured worker's control and the nature of the construction business. This court issued a limited writ of mandamus returning the cause to the commission and the Supreme Court of Ohio agreed. The court determined that the commission's fleeting reference to the injured worker's unemployment benefits reflected a lack of analysis of the critical question of whether the injured worker's 16 weeks of unemployment were actually beyond his control. The court stated, at ¶ 13-20, in pertinent part, as follows:
AWW is typically set by dividing the claimant's total earnings for the year preceding injury by 52. R.C. 4123.61. Periods of unemployment attributable to "sickness, industrial depression, strike, lockout, or other cause beyond the employee's control," however, must be omitted from the computation. Id.
At issue is the excludability of claimant's 16 weeks of seasonal unemployment. Claimant maintains that unemploy-ment was beyond his control as demonstrated by his receipt of Ohio Bureau of Employment Services ("OBES") benefits. * * * Baker counters that the annual, as opposed to one-time, occurrences of claimant's seasonal layoff removes it from the realm of unforeseen and hence involuntary un-employment.
To date, foreseeability of job loss has not rendered seasonal unemployment voluntary. In State ex rel. The Andersons v. Indus. Comm.
(1992), 64 Ohio St.3d 539, * * * the claimant knew up front that his job would only last six to eight months. The employer contested exclusion of the subsequent un-employment from the AWW calculation, asserting that because claimant accepted the job knowing that he would be released at season's end, the unemployment that followed could not be considered beyond his control.
* * * In upholding exclusion, we cited the principle of en-couraging gainful employment, observing that the claimant may have taken the position because it was all that he could find.
The Andersons' precepts obviously do not transfer seamlessly to this case. There is no evidence in this case that claimant took this job because it was the only one available. Likewise, there is no proof that claimant has stayed at this job over the years because other options did not exist. Herein lies the dilemma. It is one thing to work a seasonal job because no alternatives are present. It is perhaps another when seasonal employment becomes a pattern. At that point, it is legitimate to ask whether such employment has become a lifestyle choice.
We have decisively declared that workers' compensation benefits are not intended to subsidize lifestyle choices. * * *
While the phrase "lifestyle choice" has been applied only to benefit eligibility and not the amount thereof, it may very well be relevant in calculating AWW. AWW cannot provide a windfall to claimants. State exrel. Wireman v. Indus. Comm. (1990), 49 Ohio St.3d 286 * * *. It follows, therefore, that if seasonal unemployment springs from a lifestyle choice, then those weeks of unemployment are not beyond a claimant's control and omitting those weeks from the AWW contradicts both the statute and case law.
Determining whether a particular employment pattern is a lifestyle choice relevant to calculating a claimant's AWW is logically a question of intent, which, in turn, derives from words and actions. * * *
 {¶ 21} As indicated by the above language, these matters must be determined on a case-by-case basis.
 {¶ 22} In the present case, it is undisputed that claimant had been a seasonal worker for 24 years. Without any further evidence being presented, it would have appeared that claimant had made a lifestyle choice to be a seasonal employee and the 27 weeks would not have been properly excluded. However, claimant's past work history is not the only evidence that was before the commission for its consideration. The commission specifically relied upon claimant's testimony that, in the year immediately prior to his injury, claimant did not just accept his seasonal layoff as he had in the past. Instead, the commission found credible claimant's testimony that he had determined that he needed to secure new and better employment because his current situation was no longer providing him with sufficient income to meet his expenses. Claimant testified that, instead of accepting the latest seasonal layoff, he pursued a job search which ultimately led to employment. The commission does not abuse its discretion when it relies on testimony presented at the hearing.
 {¶ 23} In the present case, the commission cited the evidence upon which it relied in determining that the special circumstances provision of R.C. 4123.61 applies. Specifically, the commission determined that claimant had made the conscious decision and had affirmatively taken steps to cease being a seasonal employee. As such, even though the claimant had a 24 year history where he made a lifestyle choice to be a seasonal employee, the commission accepted his testimony as credible that he had determined that that options were no longer reasonable for him. Inasmuch as the credibility and weight to be attributed to the evidence is for the commission to determine, this magistrate cannot see how it can be said that the commission abused its discretion by finding the claimant's testimony on this issue to be credible. Because of his testimony and the commission's reliance on that testimony, the commission had some evidence before it upon which to determine that claimant met the "special circumstances" provision of R.C. 4123.61 and this magistrate finds that relator has not demonstrated that the commission abused its discretion in that regard and this court should deny relator's request for a writ of mandamus.