DECISION
{¶ 1} Relator, Charlie O. Huff ("relator"), commenced this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial *Page 2 
Commission of Ohio ("commission"), to vacate its order setting relator's average weekly wage ("AWW") at $55.41, and to enter a new order setting her AWW in accordance with the "special circumstances" provision of R.C. 4123.61.
 {¶ 2} Pursuant to Civ. R. 53 and Loc. R. 12(M) of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision including findings of fact and conclusions of law. (Attached as Appendix A.) Therein, the magistrate concluded that the commission did not abuse its discretion and recommended that this court not issue the requested writ of mandamus. Both relator and the commission filed objections to the magistrate's decision, and each of those parties filed a memorandum opposing the other's objections. This cause is now before the court for a full review.
 {¶ 3} Relator began her employment with respondent, Group Management Services, on October 10, 2005, and sustained a work-related injury roughly ten weeks later, on December 20, 2005. The Ohio Bureau of Workers Compensation ("BWC") set relator's AWW at $55.10, using the calculation prescribed in R.C. 4123.61, which provides, in pertinent part:
 The average weekly wage of an injured employee at the time of the injury or at the time disability due to the occupational disease begins is the basis upon which to compute benefits.
 * * *
 In * * * impairment of earnings claims, the claimant's or the decedent's average weekly wage for the year preceding the injury or the date the disability due to the occupational disease begins is the weekly wage upon which compensation shall be based. In ascertaining the average weekly wage for the year previous to the injury, or the date the disability due to the occupational disease begins any period of unemployment due to sickness, industrial depression, strike, lockout, or other cause beyond the employee's control shall be eliminated. *Page 3 
 {¶ 4} Relator moved for adjustment, arguing that the BWC's figure was unjust, and that she was entitled to a substantially higher AWW under the "special circumstances" provision in R.C. 4123.61, which provides:
 In cases where there are special circumstances under which the average weekly wage cannot justly be determined by applying this section, the administrator of workers' compensation, in determining the average weekly wage in such cases, shall use such method as will enable the administrator to do substantial justice to the claimants, provided that the administrator shall not recalculate the claimant's average weekly wage for awards for permanent total disability solely for the reason that the claimant continued working and the claimant's wages increased following the injury.
 {¶ 5} Relator argued that she meets the test for "special circumstances" for the reason that she was unemployed for most of the year preceding her injury because she stayed home to care for her children. She filed an affidavit attesting to this fact. She argued that the calculation's divisor ought to only include the ten weeks during which she was employed, and should exclude the remaining 42 weeks of the year preceding her injury, during which she was home with her children. In performing its calculation, the BWC had concluded that relator's time at home with her children cannot be excluded because it constituted a voluntary removal from the workforce.
 {¶ 6} The commission agreed, and affirmed the BWC's calculation. The district hearing officer ("DHO") concluded that the key question was whether the period of unemployment was voluntary, and determined that relator's was voluntary and should be included in the calculation. The DHO set the AWW at $55.41. The staff hearing officer ("SHO") determined that because relator's affidavit did not provide details as to the age of *Page 4 
her children or why it was necessary for her to stay home with them, the record was insufficient to support an adjustment to the AWW. The SHO's order affirming the DHO's order became the commission's final order after the commission refused further appeal.
 {¶ 7} In the present action, the magistrate disagreed that the key issue is whether the period of unemployment was voluntary, or whether relator had provided sufficient affidavit evidence of the ages of her children and why it was necessary for her to stay home with them. Rather, citing State ex rel. Hord v. Combs, Franklin App. No. 04AP-617,2005-Ohio-1532, the magistrate concluded that relator had not established special circumstances because she had not provided evidence that she intended to remain in the workforce permanently had she not been injured. The magistrate thus concluded that the commission had not abused its discretion in refusing to grant relator's request for adjustment of her AWW.
 {¶ 8} Relator lodges two objections to the magistrate's decision, which raise interrelated issues and will be addressed together. First, she argues that because the magistrate determined that the DHO was wrong to apply a voluntariness test, the magistrate should have found that the SHO was wrong, too, because when the SHO focused on relator's affidavit lacking facts about why she stayed home with her children, this constituted application of the same test for voluntariness. Relator argues that her period of unemployment, though voluntary, does not disqualify her situation from application of "special circumstances." She argues that even if she has not shown she was "forced" to stay out of the workforce, she has nonetheless demonstrated special circumstances that prevent her average weekly wage from being justly determined by applying the usual calculation. *Page 5 
 {¶ 9} Second, relator argues that the magistrate erred in requiring her to provide evidence of intent to remain in the workforce. She points out that Hord, supra, dealt with intent to remain because it involved seasonal employment. The seminal cases dealing with non-seasonal employment, she argues, do not require evidence of intent to remain in the workforce in order to justify application of the special circumstances exception. Rather, she maintains, she need only show that special circumstances exist under which the standard calculation would not justly compensate her for future lost wages.
 {¶ 10} "The average weekly wage is designed to `find a fair basis for award for the loss of future compensation.'" State ex rel. Wireman v.Indus. Comm. (1990), 49 Ohio St.3d 286, 287, 551 N.E.2d 1265, quotingRiley v. Indus. Comm. (1983), 9 Ohio App.3d 71, 73, 9 OBR 90,458 N.E.2d 428. The Supreme Court of Ohio has distinguished between involuntary unemployment, and "special circumstances," where the normal calculation of AWW would be unjust because it does not represent a fair award for loss of future compensation. In State ex rel. Clark v. Indus.Comm., 69 Ohio St.3d 563, 1994-Ohio-396, 634 N.E.2d 1014, the court explained:
 Two exceptions exist [to the standard formula for establishing AWW].
 The first directs the commission to eliminate from the weekly denominator any period of unemployment beyond claimant's control. * * *
 A broader second exception provides:
 "In cases where there are special circumstances under which the average weekly wage cannot justly be determined by applying this section, the commission * * * shall use such method as will enable it to do substantial justice to the claimants." *Page 6 
Clark, supra, at 565, quoting R.C. 4123.61. Thus, it is clear that the "special circumstances" exception is not dependent upon mere voluntariness. Indeed, the Clark court rejected the notion that voluntariness necessarily prevents a finding of unjustness. The court stated, "[i]f this were true, the only provision for adjustment would be R.C. 4123.61's `involuntary unemployment' exemption. No substantial justice exception would exist." Id. at 566. The court inWireman, supra, also recognized the disjunctive nature of the "involuntary unemployment" and the "special circumstances" provisions.Wireman, supra, at 289.
 {¶ 11} In Clark, the court held that "the proximity of the claimant's date of injury to his reentry into the work force constituted a `special circumstance.'" Clark, supra, at 565. In that case, the claimant had re-entered the workforce three weeks before her injury, after staying home to care for her daughter and granddaughter. The court inClark explicitly approved and applied the logic that this court had employed 11 years earlier in Riley, supra.
 {¶ 12} In Riley, the claimant was injured on his third week on the job, and had been unemployed for the rest of the preceding year because other income made it unnecessary for him to work; when he ceased receiving this other income, he re-entered the workforce. InRiley we held:
 1. In a case where a claimant seeking temporary total disability benefits first became employed three weeks before his injury, the commission abused its discretion and acted contrary to R.C. 4123.61 in determining claimant's average weekly wage for the year preceding the injury by utilizing the salary for three weeks as that for the entire year.
 2. Such a case constitutes "special circumstances" under which the commission, pursuant to R.C. 4123.61, should have *Page 7 
utilized a method to determine claimant's average weekly wage "as will enable it to do substantial justice to the claimant(s)."
Id. at syllabus. Neither the Riley court nor the Clark court analyzed the "voluntariness" of the period of unemployment; rather, employing the second, broader exception to the usual method of calculation, the focus remained upon the fact that a circumstance-recent entry into the workforce — rendered the usual calculation unjust and unrepresentative of the future wages lost as a result of the industrial injury.
 {¶ 13} In the case of State ex rel. Exel Logistics, Inc. v. Indus.Comm., Franklin App. No. 03AP-456, 2004-Ohio-3594, this court, citingRiley, held, "[e]ven where the period of unemployment before the new job was voluntary, the worker may qualify for the `special circumstances' exception, depending on the circumstances." In Riley, we observed, "[t]he unusual circumstances shown by relator were that, because of other income, he had no need to work and did not work for forty-nine of the fifty-two previous weeks. There is no indication that relator did not intend to work regularly in the future; in fact, the evidence is all to the contrary." Id. at 72.
 {¶ 14} More recently, in State ex rel. Ohio State Univ. Hosp. v.Indus. Comm., 118 Ohio St.3d 170, 2008-Ohio-1969, 887 N.E.2d 325, the Supreme Court of Ohio reaffirmed the holdings of Riley andClark. In Ohio State Univ. Hosp., the claimant was injured approximately three months after beginning her employment with the university, following completion of her educational requirements for the position. She had abandoned the workforce during the period in which she was enrolled in school. The court in Ohio State Univ. Hosp. held that these facts constituted "special circumstances" under R.C. 4123.61, *Page 8 
because the figure obtained by application of the standard formula did not fairly represent the wages the claimant lost due to her injury.
 {¶ 15} Citing Clark and Riley, the court explained:
 As here, both cases involved injuries that quickly followed an entry into the workforce (or a re-entry after extended absence). In Riley, the claimant had been in the workforce for only three weeks prior to injury. * * *
 "There were special circumstances involved since relator first became employed three weeks before his injury, and an unjust result was reached by considering only those three weeks. The three weeks were obviously an unjust barometer of relator's prospective future average wages that would be lost if he could not work." * * *
 We affirmed the Riley position in Clark and are guided by that reasoning in this case. * * *
(Citations omitted.) Ohio State Univ. Hosp., supra, at ¶ 15-17.
 {¶ 16} In our view, the logic of the foregoing cases applies with equal force in the present case. Like the present case, all of the foregoing cases involved workers who were injured after working for a small number of weeks in non-seasonal employment. The cases recognized that such situations are special circumstances under R.C. 4123.61 and did not require proof that the injured worker intended to remain in the job or the workforce. On the authority of those cases, relator met her burden to demonstrate that special circumstances render the usual calculation an unjust method of determining her AWW. Her entry into the workforce ten weeks prior to her injury constitutes a "special circumstance." *Page 9 
 {¶ 17} The next question, then, is whether the current AWW is substantially just. Riley, Clark, and Ohio State Univ. Hosp. are instructive on this question as well. According to relator's affidavit, she earned $2,881 during the period she was employed prior to her injury.[1] This equates to average earnings of $288.10 per week. Thus, it is clear that the current AWW of $55.41 is not substantially just and, therefore, does not comport with R.C. 4123.61. For this reason, relator has demonstrated a clear legal right to a writ of mandamus ordering the commission to vacate its order setting her AWW at $55.41, and to enter a new order setting AWW in accordance with the "special circumstances" provision of R.C. 4123.61. Accordingly, we sustain relator's objections.
 {¶ 18} The commission lodges two objections to the magistrate's decision. First, the commission argues that it was not an abuse of discretion for the commission to find that voluntary unemployment is not a special circumstance. For the reasons explained above, however, we disagree. The commission's first objection is overruled. Second, the commission argues that the magistrate erred by focusing on whether relator intended to remain in the workforce. As explained above, we agree, and sustain the commission's second objection.
 {¶ 19} In summary, we sustain relator's objections, we overrule the commission's first objection, and we sustain the commission's second objection. We adopt the magistrate's findings of fact, but we reject the magistrate's conclusions of law and substitute them with our own. We grant the requested writ of mandamus and order the commission to vacate its order setting relator's AWW at $55.41 and to enter a new order *Page 10 
setting relator's AWW in accordance with the "special circumstances" provision of R.C. 4123.61.
Relator's objections sustained, respondent's objections overruled inpart and sustained in part; writ granted.
 BRYANT and BROWN, JJ., concur. *Page 11 APPENDIX A MAGISTRATE'S DECISION Rendered May 21, 2008 Margolius, Margolius and Associates, Paul W. Newendorp, JenniferHanselman Regas and Andrew L. Margolius, for relator.
Thomas R. Winters, Acting Attorney General, and Gerald H.Waterman, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 20} In this original action, relator, Charlie O. Huff, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order setting her average weekly wage ("AWW") at $55.41, and to enter an *Page 12 
order setting AWW in accordance with the "special circumstances" provision of R.C. 4123.61.
Findings of Fact: {¶ 21} 1. On December 20, 2005, relator sustained an industrial injury while employed with respondent Group Management Services, a state-fund employer. The industrial claim is allowed for "contusion shoulder reg left," and is assigned claim number 05-424314.
 {¶ 22} 2. In March 2007, relator moved that her AWW be adjusted.
 {¶ 23} 3. In support of her motion, relator submitted her affidavit executed February 27, 2007. The affidavit states:
 * * * From December 20, 2004 through October 10, 2005, affiant was unemployed due to the necessity of staying at home to raise her children.
 * * * From October 10, 2005 th[r]ough December 20, 2005, Ms. Huff was employed at Dave's Supermarket. Affiant earned $2,881.00, during a period of seven (7) weeks.
 * * * Affiant requests that her average weekly wage be set at $411.57 per week based upon total wages earned of $2,881.00 divided by 7 weeks actually worked, and excluding 45 weeks of unemployment.
 {¶ 24} 4. Here, relator acknowledges that her affidavit erroneously avers that she worked for seven weeks from October 10 through December 20, 2005. She actually worked ten weeks during that period. (Relator's brief, at fn. 1.)
 {¶ 25} 5. In further support of her motion, relator submitted tax documents showing that her federal adjusted gross income was $2,881 for the year 2005. *Page 13 
 {¶ 26} 6. On March 13, 2007, the Ohio Bureau of Workers' Compensation ("bureau") mailed an order setting AWW at $55.10. The bureau's order explains:
 Affidavit states, in part, "From December 20th, 2004 through October 10th, 2005, affiant was unemployed due to the necessity of staying home to raise her children." This time period cannot be excluded from the calculation of the average weekly wage as it represents a voluntary removal from the work force.
 This decision is based on:
 Wage information and an affidavit submitted by the Injured Worker's Representative.
 {¶ 27} 7. Relator administratively appealed the bureau's March 13, 2007 order.
 {¶ 28} 8. On June 14, 2007, a district hearing officer ("DHO") heard relator's administrative appeal from the bureau's order. Following the hearing, the DHO issued an order vacating the bureau's March 13, 2007 order. The DHO's order states:
 The District Hearing Officer orders that the injured worker's average weekly wage is to be set at $55.41.
 The District Hearing Officer arrived at the reset average weekly wage figure by dividing the injured worker's total earnings of $2,881.00 in the year preceding her 12/20/2005 industrial accident by 52 weeks.
 The District Hearing Officer finds that the reset average weekly wage figure does substantial justice to the injured worker, appropriately reflects her average weekly earnings in the year preceding her 12/20/2005 industrial accident, and does not not [sic] provide the injured worker with a windfall.
 The District Hearing Officer finds that the injured worker failed to sustain her burden of proving special circumstances that would warrant a different calculation of her average weekly wage. The injured worker's request to exclude 45 weeks of unemployment is denied. The District Hearing Officer finds that the injured worker's unemployment was not beyond her control and was based upon a voluntary decision *Page 14 
to be a stay-at-home mother for that period. The District Hearing Officer finds that the injured worker's voluntary removal of herself from the workforce does not constitute a special circumstance that would warrant a different calculation of her average weekly wage.
 {¶ 29} The DHO's order indicates that relator's counsel appeared at the hearing but relator did not.
 {¶ 30} 9. Relator administratively appealed the DHO's order of June 14, 2007.
 {¶ 31} 10. On July 25, 2007, a staff hearing officer ("SHO") heard relator's administrative appeal from the DHO's order of June 14, 2007. Following the hearing, the SHO issued an order affirming the DHO's order with a further explanation. The SHO's order states:
 The Staff Hearing Officer affirms the District Hearing Officer's setting of the average weekly wage at $55.41 based on claimant's earnings for the year prior to injury. While there is an affidavit on file dated 02/27/2007 indicating that the claimant had to stay home the rest of the year to take care of her children, there is no indication as to the age of the children or what her duties were or why it was necessary for her to be at home for those weeks. Therefore, special circumstances have not been proven to have existed for the year prior to injury.
 {¶ 32} The SHO's order indicates that relator's counsel appeared at the hearing but relator did not.
 {¶ 33} 11. On August 16, 2007, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of July 25, 2007.
 {¶ 34} 12. On November 13, 2007, relator, Charlie O. Huff, filed this mandamus action. *Page 15 
Conclusions of Law: {¶ 35} It is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 R.C. 4123.61 states in part:
 * * * [T]he claimant's * * * average weekly wage for the year preceding the injury * * * is the weekly wage upon which compensation shall be based. In ascertaining the average weekly wage for the year previous to the injury, * * * any period of unemployment due to sickness, industrial depression, strike, lockout, or other cause beyond the employee's control shall be eliminated.
 In cases where there are special circumstances under which the average weekly wage cannot justly be determined by applying this section, the administrator of workers' compensation, in determining the average weekly wage in such cases, shall use such method as will enable him to do substantial justice to the claimants.
 {¶ 36} "Special circumstances" is not defined by the statute, but special circumstances have generally been confined to uncommon situations. State ex rel. Wireman v. Indus. Comm. (1990),49 Ohio St.3d 286, 288. Moreover, special circumstances can be invoked only if the standard calculation yields a result that is substantially unjust.State ex rel. Cawthorn v. Indus. Comm. (1997), 78 Ohio St.3d 112, 115;State ex rel. Clark v. Indus. Comm. (1994), 69 Ohio St.3d 563, 566.
 {¶ 37} AWW is designed to find a fair basis for award offuture compensation. State ex rel. Riley v. Indus. Comm. (1983),9 Ohio App.3d 71, 73. The AWW should approximate the average amount that the claimant would have received had he continued working after the injury as he had before the injury. State ex rel. Erkard v. Indus. Comm.
(1988), 55 Ohio App.3d 186, 188. *Page 16 
 {¶ 38} In calculating AWW, two considerations dominate. First, the AWW must do substantial justice to the claimant. Second, it should not provide a windfall. Wireman, at 287.
 {¶ 39} Here, the commission, through its SHO, applied R.C. 4123.61's standard calculation. That is, the commission divided relator's total earnings during the year prior to her date of injury by 52 weeks to obtain an AWW of $55.41 ($2,881 ÷ 52 = $55.40).
 {¶ 40} The commission refused to eliminate from the calculation the 42 weeks when relator was voluntarily unemployed "due to the necessity of staying at home to raise her children" as claimed in her affidavit. Had the commission eliminated the 42 weeks of unemployment as relator requested, AWW would be set at $288.10 ($2,881 ÷ 10 = $288.10). Parenthetically, the magistrate notes that this is less than the $411.57 requested by relator erroneously based upon seven weeks of employment ($2,881 ÷ 7 = $411.57).
 {¶ 41} Although the SHO's order of July 25, 2007 affirms the DHO's order of June 14, 2007 in the setting of AWW at $55.41, analysis must begin with the observation that the SHO's order sets forth a separate additional ground for denial of special circumstances.
 {¶ 42} The DHO's order finds that special circumstances do not exist because relator's unemployment during the year prior to the date of injury was voluntary. The DHO's order suggests that the voluntary nature of relator's decision to be a "stay-at-home mother" precludes special circumstances as a matter of law.
 {¶ 43} Unlike the DHO's order, the SHO's order finds fault with relator's affidavit. The SHO found the affidavit to be insufficient because it fails to provide information *Page 17 
such as the age of the children or what relator's duties were or why it was necessary for her to be at home for those weeks.
 {¶ 44} Here, relator challenges the basis set forth in the DHO's order for applying the standard calculation, but ignores the basis set forth in the SHO's order for rejecting special circumstances.
 {¶ 45} In Riley, the claimant, Clifford Riley, sustained an industrial injury after working only three weeks. He had been unemployed for the remainder of the preceding year because, according to his statement, he was then receiving other income making it unnecessary for him to work. Id. at 71. In Riley, the commission set AWW by dividing total earnings for the three weeks worked by 52. The Riley court held that an unjust result was reached when the commission applied the standard calculation. The Riley court issued a writ of mandamus ordering the commission to determine AWW as will enable it to do substantial justice.
 {¶ 46} According to relator, the Riley case supports the proposition that voluntary unemployment alone is not a basis for determining that special circumstances do not exist. (Relator's reply brief, at 2.) Relator suggests that the commission's decision to apply the standard calculation is inconsistent with Riley.
 {¶ 47} The magistrate agrees with relator to the extent that the DHO's order provides reasoning that is inconsistent with Riley and other cases that have followed Riley.
 {¶ 48} Obviously, it can be said that the claimant in Riley was voluntarily unemployed prior to his three weeks on the job at which he was injured. See State ex rel. Clark v. Indus. Comm. (1994),69 Ohio St.3d 563, 566 (claimant's reduced hours *Page 18 
were voluntary). Clearly, the DHO's sole reliance upon the voluntary nature of relator's decision to be a stay-at-home mother to deny a finding of special circumstances constitutes an abuse of discretion as to the DHO's order. Clark. However, that conclusion does not end the inquiry here.
 {¶ 49} The SHO's order sets forth unanswered questions regarding relator's affidavit which, again, in conclusory fashion, states:
 * * * From December 20, 2004 through October 10, 2005, affiant was unemployed due to the necessity of staying at home to raise her children.
 {¶ 50} Relator herself was not present at the hearing to answer the SHO's questions.
 {¶ 51} While it can be said that the credibility of relator's affidavit was not automatically established and that it was the SHO's prerogative to question it, in the magistrate's view, the SHO's questions miss the mark as to the dispositive issue.
 {¶ 52} The real issue before the SHO was not the age of the children or just how necessary it was for relator to be at home during the period of her unemployment, but whether she intended to permanently remain in the workforce when she was employed at Dave's Supermarket in December 2005. Relator's affidavit fails to answer the dispositive question.
 {¶ 53} With no evidence in the record upon which the SHO could rely to support a finding that relator intended to remain permanently in the workforce, there is no basis for finding special circumstances. See,State ex rel. Hord v. Combs, dba Combs Greenhouse, Franklin App. No. 04AP-617, 2005-Ohio-1532, at ¶ 39-42. *Page 19 
 {¶ 54} Given the above analysis, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
KENNETH W. MACKE, Magistrate
[1] In her affidavit, she stated that this figure represents earnings for seven weeks, but the record reveals, and neither party disputes, that this figure actually represents earnings for 10 weeks.
 *Page 1