[Cite as *State ex rel. Huntington Bancshares Inc. v. Berry*, 2022-Ohio-531.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Huntington Bancshares Incorporated, | : | |
| | : | |
| Relator, | : | |
| | : | |
| v. | : | No. 20AP-161 |
| | : | |
| Laura Berry et al., | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on February 24, 2022

**On brief:** *M. Soto Law Office, LLC*, and *Michael Soto*, for relator.

**On brief:** *Larrimer & Larrimer*, and *Thomas L. Reitz,* for respondent Laura Berry.

**On brief:** *Dave Yost*, Attorney General, and *Denise A. Gary*, for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTION TO THE MAGISTRATE'S DECISION

DORRIAN, J.

{¶ 1} In this original action, relator, Huntington Bancshares Incorporated ("Huntington"), seeks a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order setting the average weekly wage ("AWW") for respondent Laura Berry and to enter a new order setting Berry's AWW at a lower figure.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings

of fact and conclusions of law, which is appended hereto. The magistrate recommends this court deny Huntington's request for a writ of mandamus. Huntington has filed the following objection to the magistrate's decision:

> THE MAGISTRATE MISAPPLIED THE SOME EVIDENCE RULE. THE SPECIAL CIRCUMSTANCES EXCEPTION TO AWW CALCULATION DOES NOT APPLY TO THIS CASE.

{¶ 3}   Berry began working for Huntington on May 7, 2018. On June 12, 2018, Berry sustained a work-related injury.  Berry's workers' compensation claim was allowed for right humeral shaft fracture.  Huntington paid Berry wage continuation from June 13 to 21, 2018, and temporary total disability compensation from June 22 to August 19, 2018. Huntington's third-party administrator established Berry's full weekly wage at $692.40 and AWW at $68.94.

{¶ 4}   On April 5, 2019, Berry filed a motion with the Ohio Bureau of Workers' Compensation ("BWC") requesting that her AWW be set the same as her full weekly wage. Berry supported the motion with her affidavit, which stated that in the year preceding her injury she provided caregiving services to her mother-in-law at a wage rate of $3,000 per month and sold $4,664.80 worth of crafts.

{¶ 5}   A district hearing officer ("DHO") granted Berry's motion and set Berry's AWW at $742.02. The DHO included Berry's wages from the six weeks she worked at Huntington and the amount Berry claimed to have earned providing caregiving services to her mother-in-law in Berry's wage total.  The DHO refused to include the amounts Berry claimed from her craft sales in the AWW calculation, as Berry failed to present evidence of the costs she incurred to generate those sales.  Huntington appealed the DHO's order.

{¶ 6}   Following a December 27, 2019 hearing, a staff hearing officer ("SHO") vacated the DHO's order and set Berry's AWW at $597.48. The SHO denied Berry's request to include the $3,000 per month Berry claimed to have earned providing caregiving services in the AWW calculation, as Berry failed to present "W-2's, paystubs, or cancelled checks" to "document these wages."  (Stip.R. at 35.)  The SHO further stated that "[i]n order to do substantial justice to the Injured Worker, as set forth in R.C. 4123.61," the SHO was excluding 46 weeks from the AWW divisor. (Stip.R. at 35.)  The SHO noted that "during those 46 weeks, the injured worker was unemployed because she

was caring for an ill family member, but nonetheless continued looking for full-time employment which she ultimately secured with the Employer of Record." (Stip.R. at 35.) The SHO calculated Berry's AWW by dividing Berry's wages from Huntington, $3,584.96, by the 6 weeks Berry worked at Huntington.

{¶ 7} The commission refused Huntington's appeal from the SHO's order. Huntington filed its complaint in mandamus with this court on March 17, 2020.

{¶ 8} R.C. 4123.61 addresses the AWW calculation, providing as follows:

> The average weekly wage of an injured employee at the time of the injury * * * is the basis upon which to compute benefits.
>
> * * *
>
> In * * * impairment of earnings claims, the claimant's or the decedent's average weekly wage for the year preceding the injury * * * is the weekly wage upon which compensation shall be based. In ascertaining the average weekly wage for the year previous to the injury * * * any period of unemployment due to sickness, industrial depression, strike, lockout, or other cause beyond the employee's control shall be eliminated.
>
> In cases where there are special circumstances under which the average weekly wage cannot justly be determined by applying this section, the administrator of workers' compensation, in determining the average weekly wage in such cases, shall use such method as will enable the administrator to do substantial justice to the claimants * * *.

{¶ 9} "The average weekly wage is designed to 'find a fair basis for award for the loss of future compensation.' " *State ex rel. Wireman v. Indus. Comm.*, 49 Ohio St.3d 286, 287 (1990), quoting [*State ex rel.*] *Riley v. Indus. Comm.*, 9 Ohio App.3d 71, 73 (10th Dist.1983). As such, "the [AWW] should approximate the average amount that the claimant would have received had he continued working after the injury as he had before the injury." *State ex rel. Erkard v. Indus. Comm.*, 55 Ohio App.3d 186, 188 (10th Dist.1988).

{¶ 10} The standard formula for calculating the AWW "is to divide claimant's earnings for the year preceding the injury by fifty-two weeks." *State ex rel. Clark v. Indus. Comm.*, 69 Ohio St.3d 563, 565 (1994). R.C. 4123.61 provides two exceptions to the standard calculation: (1) unemployment due to causes "beyond the employee's control";

and (2) the "special circumstances" provision. R.C. 4123.61; *State ex rel. Mattscheck v. Indus. Comm.*, 10th Dist. No. 12AP-255, 2013-Ohio-285, ¶ 4.

{¶ 11} The magistrate determined that the SHO applied "the first statutory ground[] for deviation," and excluded "42[1] weeks from the standard computation because [Berry's] period of unemployment was beyond her control." (Appended Mag. Decision at ¶ 53.) The magistrate further found the "SHO's ultimate factual determination" to be that Berry was "prevented from working by reasons that would warrant applying a special calculation to effect substantial justice." (Appended Mag. Decision at ¶ 57.) The magistrate concluded that there was "some evidence to support the commission's decision to depart from the standard AWW calculation in R.C. 4123.61 and apply the special-circumstances exception to divide Berry's prior-year income only by the six weeks she worked for Huntington." (Appended Mag. Decision at ¶ 59.)

{¶ 12} However, our review of the SHO's decision demonstrates the SHO applied only the special circumstances exception in the present case. Although the SHO stated that Berry was unemployed for 46 weeks in the year preceding her injury, the SHO never concluded that Berry's unemployment during that period was due to causes beyond her control. *Compare State ex rel. Baker Concrete Constr., Inc. v. Indus. Comm.*, 102 Ohio St.3d 149, 2004-Ohio-2114, ¶ 23 (stating that "the critical question" when applying the unemployment-based exception from R.C. 4123.61 is "whether claimant's * * * weeks of unemployment were actually beyond his control"). Periods of unemployment which are not beyond the employee's control may nevertheless satisfy the special circumstances exception in R.C. 4123.61. *See State ex rel. Sutherland v. Indus. Comm.*, 10th Dist. No. 85AP-866 (Sept. 25, 1986) (holding that, although a period of unemployment due to incarceration was not beyond the claimant's control, the period of incarceration was a "special circumstance" under R.C. 4123.61).

{¶ 13} The SHO stated it was excluding 46 weeks from the AWW divisor "[i]n order to do substantial justice" to Berry. While the unemployment-based exception in R.C. 4123.61 does not include a substantial justice component, the special circumstances exception provides that the AWW may be calculated by "such method" as will accomplish "substantial justice" when special circumstances are present. R.C. 4123.61. Accordingly,

---

[1] *See infra* at ¶ 14.

the SHO's order demonstrates the SHO found the special circumstances exception from R.C. 4123.61 applicable.

{¶ 14} The magistrate's decision mistakenly states that the SHO excluded 42, rather than 46, weeks from the AWW calculation. Accordingly, the magistrate's decision is modified to reflect that the SHO applied the special circumstances exception to exclude 46 weeks from the standard AWW calculation.

{¶ 15} Huntington objects to the magistrate's decision, asserting the magistrate erred by finding some evidence to support the commission's decision. Huntington contends that there was no evidence to support the commission's finding that Berry was unemployed in the year preceding her injury, as Berry testified only that she was employed providing caregiving services to her mother-in-law throughout that time. Huntington asserts that Berry's failure to present evidence to support her alleged caregiving wages did not amount to proof of unemployment.

{¶ 16} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, the relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967), paragraph one of the syllabus; *State ex rel. Elliot v. Indus. Comm.*, 26 Ohio St.3d 76, 78 (1986). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by some evidence. *Elliot* at 79, citing *State ex rel. Hutton v. Indus. Comm.*, 29 Ohio St.2d 9, 13 (1972).

{¶ 17} "The commission is the exclusive fact-finder with sole responsibility to evaluate the weight and credibility of the evidence." *State ex rel. Perez v. Indus. Comm.*, 147 Ohio St.3d 383, 2016-Ohio-5084, ¶ 20, citing *State ex rel. Burley v. Coil Packing, Inc.*, 31 Ohio St.3d 18, 20-21 (1987). Thus, this court's role is limited to determining whether there is some evidence in the record to support the commission's stated basis for its decision. *Id.*

{¶ 18} Berry testified at the December 27, 2019 hearing that she was compensated in various ways for providing caregiving services to her mother-in-law. Berry claimed that her "rent was paid," a "check was issued to [her] for $1,000," and that she "withdrew moneys totaling up to $700 from a bank machine." (Dec. 27, 2019 Hearing Tr. at 18.)

However, Berry did not provide copies of the checks allegedly issued to her as payment and she refused to produce her tax returns citing "privacy" concerns. (Dec. 27, 2019 Hearing Tr. at 17, 24.) Berry testified that she was looking for work throughout the "[t]welve months" prior to her employment with Huntington, while also providing caregiving services to her mother-in-law. (Dec. 27, 2019 Hearing Tr. at 22.)

{¶ 19} The SHO did not find Berry's testimony regarding her caregiving wages credible. This court "cannot second guess the commission's judgments either as to witness credibility or on the proper weight to accord particular evidence." *State ex rel. Welsh Ents., Inc. v. Indus. Comm.*, 10th Dist. No. 19AP-127, 2020-Ohio-2801, ¶ 26. "Part of the commission's authority to weigh and evaluate evidence * * * is the freedom to reject it as unpersuasive." *State ex rel. Singleton v. Indus. Comm.*, 71 Ohio St.3d 117, 118 (1994).

{¶ 20} Once the commission rejected Berry's evidence regarding her caregiving wages, the SHO could reasonably characterize Berry's situation during that time as unemployment. *See State ex rel. Hord v. Combs*, 10th Dist. No. 04AP-617, 2005-Ohio-1532, ¶ 14 (holding that "the use of the word 'wage' in R.C. 4123.61 constitutes monetary remuneration by an employer for labor or services"); *Rini v. Unemp. Comp. Bd. of Rev.*, 9 Ohio App.3d 214, 215 (8th Dist.1983), fn. 1 (observing that, as the "essence of employment is the receipt of wages or remuneration," the "performance of services without being entitled to remuneration for those services is not employment, but unemployment"). Accordingly, there was some evidence to support the commission's finding that, in the year preceding her injury, Berry was unemployed but searching for work while caring for an ill family member.

{¶ 21} Huntington fails to demonstrate that the commission abused its discretion by applying the special circumstances exception in the present case. The special circumstances exception in R.C. 4123.61 presents two questions: (1) did the claimant demonstrate "special circumstances" so as to warrant a departure from the standard AWW formula, and (2) if so, is the current AWW substantially just? *Clark* at 565. "When special circumstances are established by the claimant, the commission has broad discretion to choose a method for calculating the average weekly wage." *State ex rel. Valley Pontiac Co., Inc. v. Indus. Comm.*, 71 Ohio App.3d 388, 393 (10th Dist.1991).

{¶ 22} "[T]he proximity of the claimant's date of injury to his reentry into the work force" may "constitute[] a 'special circumstance' " under R.C. 4123.61. *Clark* at 565, citing *Riley*. In *Clark*, the claimant was injured four weeks after re-entering the workforce, following an extended absence from the workforce while she cared for her granddaughter. The court concluded that such facts satisfied the R.C. 4123.61 "special circumstances" exception. *Clark* at 565. *Accord State ex rel. Huff v. Group Mgt. Servs.*, 10th Dist. No. 07AP-931, 2008-Ohio-6221, ¶ 16 (finding the claimant's "entry into the workforce ten weeks prior to her injury constitute[d] a 'special circumstance' " under R.C. 4123.61). Accordingly, the commission did not abuse its discretion by finding Berry's injury six weeks after re-entering the workforce, following an absence from the workforce while caring for an ill family member, to constitute a "special circumstance" under R.C. 4123.61.

{¶ 23} A recent entry into the workforce may "render[] the usual calculation unjust and unrepresentative of the future wages lost as a result of the industrial injury." *Huff* at ¶ 12. The standard 52-week AWW calculation "presupposes the usual circumstance where the claimant will have been employed at the beginning of the year and continues to be so (but for justified interruptions) for the entire year." *Riley* at 72. In *Riley*, the claimant "first became employed three weeks before his injury," and had not worked during the remainder of the preceding year due to an independent financial arrangement. *Id.* at 73. This court concluded that the commission arrived at an "unjust result" by utilizing the relator's salary "for three weeks as that for the entire year." *Id.*

{¶ 24} In *Smith v. Indus. Comm.*, 25 Ohio St.3d 25 (1986), the Supreme Court of Ohio observed that including weeks the claimant operated a gas station at a net loss in the AWW calculation would "increase[] the number of weeks by which the total earnings are divided * * *, without adding any income whatsoever to the total earnings." *Smith* at 27. The *Smith* court concluded that such a "lopsided alteration of the average weekly wage calculation produce[d] the type of inequitable result which the legislature sought to avoid through the inclusion of the 'special circumstances' provision in R.C. 4123.61." *Id.* at 27. *Accord Sutherland* (concluding that basing the AWW calculation "upon the bare facts of [the claimant's] earnings [from four days of employment] over the year pr[e]ceding his injury * * * result[ed] in a lopsided and unjust average weekly wage upon which to base [the claimant's] benefits"); *Valley Pontiac Co.* at 393 (holding that averaging the

claimant's "relatively small income earned in a seventeen-week period over an entire year [would] simply not do substantial justice, nor is it a fair result"); *State ex rel. Ohio State Univ. Hosp. v. Indus. Comm.*, 118 Ohio St.3d 170, 2008-Ohio-1969, ¶ 17.

{¶ 25} The outcome Huntington advocates for in the present case, utilizing Berry's 6 weeks' worth of wages from Huntington as Berry's income for the entire year, would result in a lopsided and unjust AWW calculation. Indeed, dividing Berry's $3,584.96 worth of income by 52 weeks would result in an AWW of $68.94; yet, Berry was earning close to $600 a week while working for Huntington. The SHO's alternative AWW calculation, which divided Berry's earnings from Huntington by the 6 weeks Berry worked there, resulted in an AWW which fairly approximated the wages Berry would have received had she continued working after her injury as she had before her injury. Accordingly, the commission appropriately applied the special circumstances exception from R.C. 4123.61 to arrive at an AWW which was substantially just. Huntington fails to establish a clear legal right to relief in mandamus.

{¶ 26} On review of the magistrate's decision, an independent review of the record, and due consideration of Huntington's objection, we find the magistrate has properly determined the pertinent facts and applied the appropriate law, with the modification noted herein. We therefore overrule Huntington's objection to the magistrate's decision and adopt the magistrate's modified decision as our own, including the findings of fact and conclusions of law contained therein. Accordingly, the requested writ of mandamus is hereby denied.

*Objection overruled;*
*writ of mandamus denied.*

KLATT and MENTEL, JJ., concur.

———————————

# APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENMTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Huntington Bancshares Incorporated, | : | |
| | : | |
| Relator, | : | |
| | : | |
| v. | : | No. 20AP-161 |
| | : | |
| Laura Berry et al., | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

### M A G I S T R A T E ' S   D E C I S I O N

Rendered on June 16, 2021

*M. Soto Law Office, LLC,* and *Michael Soto,* for relator.

*Larrimer and Larrimer,* and *Thomas L. Reitz,* for respondent Laura Berry.

*Dave Yost,* Attorney General, and *Denise A. Gary,* for respondent Industrial Commission of Ohio.

IN MANDAMUS AND
RESPONDENT'S MOTION TO RECONSIDER
PRIOR EVIDENTIARY RULING

{¶ 27} Relator, Huntington Bancshares Incorporated ("Huntington"), seeks a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order setting the average weekly wage ("AWW") used in computation of benefits for respondent, Laura Berry, and enter a new order setting Berry's AWW at a lower figure proposed by Huntington. The matter is presently before the magistrate both on the merits and on respondent's motion to reconsider a prior evidentiary ruling by the magistrate.

Findings of Fact:

{¶ 28} 1. Huntington is a self-insured employer participating in Ohio's workers' compensation system.

{¶ 29} 2. Huntington hired Berry in a banking position on or about May 7, 2018. (Stip. at 62.)

{¶ 30} 3. Berry's online application and accompanying resume outlined her work history in finance-related positions and, more recently, as the owner of a handmade craft company and freelance designer. (Stip. at 51-58.)

{¶ 31} 4. Berry sustained an injury on June 12, 2018 in the course of and arising out of her employment with Huntington when she tripped and fell. (Stip. at 1.)

{¶ 32} 5. Berry's claim was allowed for right humeral shaft fracture. (Stip. at 35.)

{¶ 33} 6. Huntington paid wage continuation followed by temporary total disability ("TTD") compensation. Pursuant to calculations provided by Huntington's third-party administrator, Huntington established Berry's full weekly wage ("FWW") at $692.40 and AWW at $68.94, based on assumptions regarding Berry's very low income for the year preceding her injury, aside from her brief period of full employment with Huntington. (Stip. at 2-5.)

{¶ 34} 7. Berry filed on April 5, 2019 a motion with the Ohio Bureau of Workers' Compensation ("BWC") requesting that her AWW be set the same as her FWW, $692.40. (Stip. at 7.) Berry supported the motion with evidence of earnings, principally an affidavit dated March 30, 2019 in which Berry attested that she had engaged in caregiving services for her mother-in-law between June 12, 2017 and May 7, 2018 (commencement of her employment with Huntington) at a wage rate of $3,000.00 per month, and had also sold crafts during this period with additional income of $4,664.80. (Stip. at 9.) The described work as a caregiver did not appear on her resume and job application submitted to Huntington in the hiring process. (Stip. at 51-58.)

{¶ 35} 8. Berry did not provide any further documentation to support her earnings for caregiving services. (Stip. at 7-22.)

{¶ 36} 9. A district hearing officer ("DHO") heard the motion and by order dated September 12, 2019 set Berry's AWW at $742.02. (Stip. at 24-25.) The DHO computed this amount by adding the $35,000.00 Berry claimed for caregiving services in the year

preceding her injury with the $3,584.91 Berry earned at Huntington before her injury, for total wages of $38,584.91, giving the AWW of $742.02 when divided by 52. (Stip. at 24-25.) The DHO declined to consider income reported by Berry for the sale of crafts because Berry had not furnished corresponding expense information relating to the sales. (Stip. at 24-25.)

{¶ 37} 10. Huntington filed an appeal from the DHO's order, and in connection with this appeal requested a pre-hearing conference to address Berry's failure to provide supporting documentation, such as tax returns, to substantiate her income as a caregiver. The pre-hearing conference took place on October 30, 2019, attended by counsel for Huntington, counsel for Berry, and Berry personally. The Columbus Hearing Administrator conducted the hearing, and produced a compliance letter mailed October 30, 2019 noting the results of the conference:

> At the request of the Employer, a prehearing conference was held on 10/24/2019. Present at the prehearing conference were:
>
> FOR THE INJURED WORKER: Mr. Larrimer, Ms. Berry
> FOR THE EMPLOYER: Mr. Soto
> FOR THE ADMINISTRATOR: No Appearance
>
> The issue(s) addressed at the pre-hearing conference was Discovery, Wages.
>
> It is the finding of the Hearing Administrator that the following provision(s) have been decided upon:
>
> The Employer requested documentation of wages paid to the Injured Worker reflected in the file as a stipend paid to the Injured Worker for care provided as to the Injured Worker's late Mother-in-law.
>
> The Injured Worker indicated she did not have access to those records.
>
> At this time, the claim will be forwarded to docketing and a hearing will be scheduled before a Staff Hearing Officer on the issue of Average Weekly Wage/Full Weekly Wage and the Employer's appeal, filed 09/30/2019, to the 09/17/2019 District Hearing Officer order.

It is further the finding of the Hearing Administrator that the parties must adhere to the provisions of this compliance letter.

(Stip. at 33.)

{¶ 38} 11. A staff hearing officer ("SHO") heard Huntington's appeal on December 27, 2019. Berry testified in detail regarding payments received from family members for her nursing care for her mother-in-law. (Supp. Stip. at 92.) Berry testified that she did not have copies of checks or other transactions through which she was paid, including payment of her rent on her behalf by family members. (Supp. Stip. at 92.) Berry further testified that she did not set forth her caregiving employment on her resume or Huntington employment application because she considered this irrelevant to the prospective employment. Berry specifically testified that she claimed the caregiving earnings as income for tax purposes but refused to furnish documentary proof because she believed it violated her privacy rights. (Supp. Stip. at 90.) In the course of the hearing, the SHO stated that he would not consider an unsworn statement provided by Berry's relatives and ultimately would not consider her caregiving income for lack of supporting documentation.

{¶ 39} The SHO issued an order dated December 27, 2019 that vacated the DHO order and set Berry's AWW at $597.48, computed by adding Berry's 6 weeks of wages with Huntington and dividing by 6, rather than by 52 as the DHO had done. The SHO supported this determination with the following explanation:

> In order to do substantial justice to the Injured Worker as set forth in R.C. 4123.61, the Staff Hearing Officer excludes 46 weeks from the calculation of the Injured Worker's average weekly wage. The evidence indicates that during those 46 weeks, the Injured Worker was unemployed because she was caring for an ill family member, but none the less continued looking for full-time employment which she ultimately secured with the Employer of Record.

(Stip. at 35-36.)

{¶ 40} 12. The commission refused Huntington's appeal from the SHO order by decision mailed January 23, 2020, providing no developed reasoning or conclusions other than absence of error in the SHO's order. (Stip. at 38.)

{¶ 41} 13.  Huntington sought reconsideration, for which the commission failed to reach a majority decision due to recusal of two members.  (Stip. at 84.)

{¶ 42} 14.  Huntington filed its complaint in mandamus with this court on March 17, 2020.

{¶ 43} 15.  The parties filed their stipulated evidence on June 22, 2020.

{¶ 44} 16.  Huntington filed on June 22, 2020 a motion to supplement the stipulated evidence with a transcript of the hearing before the SHO, which Huntington had attempted to include in its subsequent motions before the commission but ultimately failed to include.

{¶ 45} 17.  By order dated June 23, 2020, the magistrate granted Huntington's motion to supplement the evidence.

{¶ 46} 18.  Berry moved for reconsideration of the magistrate's order admitting the supplemental evidentiary materials on June 30, 2020, asserting that neither she nor the commission had been given the opportunity to file memoranda in opposition to Huntington's motion to supplement.  The motion for reconsideration has not yet been ruled upon by the magistrate.

Discussion and Conclusions of Law:

{¶ 47} The magistrate first considers Berry's motion to reconsider the magistrate's prior evidentiary ruling allowing Huntington to supplement the record with a transcript of the hearing before the SHO.  Berry argues that this transcript was not submitted either on appeal from the SHO's order to the commission or on application for reconsideration of the commission's refusal to hear the appeal.  Berry asserts that the hearing transcript was not properly before the commission to consider as evidence and that the commission's determination on appeal and refusal of reconsideration cannot be evaluated in reliance on evidence that the commission did not have before it.  Huntington argues to the contrary that consideration of the transcript is proper in this mandamus action because the operative order of the commission remains the SHO's order setting the AWW and this court's review must include examination of the testimony upon which the SHO relied.  Given the procedural history of the matter before the commission, the magistrate finds that Huntington's argument remains well-taken. The commission denied the appeal without examination of the merits and denied a reconsideration on purely procedural

grounds due to recusals by commissioners. Moreover, the argument that the operative order is the one that must be examined in mandamus is consistent with the purpose of mandamus: to examine the commission's proceedings and determination for an abuse of discretion. The magistrate therefore maintains the prior evidentiary ruling allowing supplementation of the record with a transcript of proceedings before the SHO.

{¶ 48} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 49} Huntington asserts the commission abused its discretion when it applied a limited and inapplicable exception to divide Berry's total earnings for the year prior to her work-related injury by 6 weeks instead of 52. Huntington asserts that, once the SHO rejected various claims of income from caregiving and craft sales, and limited her prior-year income to 6 weeks of wages from Huntington, the AWW should have been calculated on the basis of 52 work weeks, giving a much lower number.

{¶ 50} R.C. 4123.61 provides that "[t]he average weekly wage of an injured employee at the time of the injury or at the time disability due to the occupational disease begins is the basis upon which to compute benefits." The statute does not provide a specific method of calculation by express reference to a 52-week divisor, but the commission and courts have assumed that the 52-week calculation is the standard when finding the "average" wage. *State ex rel. Wireman v. Indus. Comm.,* 49 Ohio St.3d 286-87 (1990). Moreover, R.C. 4123.61 provides an exception that reinforces the presumption of a 52-week norm:

> In ascertaining the average weekly wage for the year previous to the injury * * * any period of unemployment due to sickness, industrial depression, strike, lockout, or other cause beyond the employee's control shall be eliminated.

{¶ 51} In addition to the above adjustment for periods of involuntary unemployment, the statute further provides a fairness-based opportunity for deviation from the standard computation:

> In cases where there are special circumstances under which the average weekly wage cannot justly be determined by applying this section, the administrator of workers' compensation, in determining the average weekly wage in such cases, shall use such method as will enable the administrator to do substantial justice to the claimants, provided that the administrator shall not recalculate the claimant's average weekly wage for awards for permanent total disability solely for the reason that the claimant continued working and the claimant's wages increased following the injury.

{¶ 52} This court has stated that application of the special-circumstances exception in R.C. 4123.61 has "generally been confined to uncommon situations involving the claimant's age, education, and background." *State ex rel. Howard v. Indus. Comm.,* 10th Dist. No. 08AP-129, 2008-Ohio-5616, ¶ 7, citing *Wireman* at 288. The claimant bears the burden of submitting corroborating evidence of wages received to support an adjustment to AWW. *State ex rel. Baker v. Indus. Comm.,* 86 Ohio St.3d 575 (1999); *State ex rel. Tyler v. Indus. Comm.,* 10th Dist. No. 03AP-836, 2004-Ohio-2818; *State ex rel. Kidwell v. Indus. Comm.,* 10th Dist. No. 02AP-940, 2003-Ohio-4509.

{¶ 53} The SHO in this case concluded that Berry should benefit from the exclusion of 42 weeks from the standard computation because her period of unemployment was beyond her control, thereby applying the first statutory grounds for deviation:

> The evidence indicates that during those 46 weeks, the Injured Worker was unemployed because she was caring for an ill family member, but none the less continued looking for full-time employment which she ultimately secured with the employer of record.

(Stip. at 35.)

{¶ 54} Huntington points out that this conclusion was not based on any evidence before the SHO, because the thrust of Berry's application for recalculation of her AWW was that she had, in fact, income beyond her Huntington wages to be used in a 52-week computation. Once the SHO rejected this income for lack of documentation, there was no evidence upon which the SHO could grant the motion on the basis submitted by Berry.

{¶ 55} Ohio courts have interpreted the exceptions under R.C. 4123.61 as presenting two distinct grounds for deviation and calculation of the AWW: forced unemployment, and special circumstances. *State ex rel. Huff v. Group Mgt. Serv.,* 10th Dist. No. 07AP-931, 2008-Ohio-6221, ¶ 10. Recent entry into the workforce can be a special circumstance rendering the typical 52-week divisor unjust and unrepresentative of the future wages lost as a result of workplace injury. *Id.* at ¶ 12. This court has also held that part-time work in the year prior to the date of injury can also constitute a special circumstance. *State ex rel. Mattscheck v. Indus. Comm.,* 10th Dist. No. 12AP-255, 2013-Ohio-285.

{¶ 56} *Huff*, in particular, stressed that the emphasis in reaching a substantially just calculation of AWW must be upon reaching accurate determination of future earnings lost due to workplace injury. *Huff* at 12. *Huff* involved a claimant who worked for the responsible employer for approximately ten weeks, after a period of staying home to care for her children. The claimant in *Huff* successfully argued that 42 weeks of the prior year should be excluded from calculation of her AWW. In declining to grant a writ, this court found no abuse of discretion in the commission's exclusion of 42 weeks from the calculation, based on special circumstances. *Id.* at ¶ 10. *See also, State ex rel. Riley v. Indus. Comm.,* 9 Ohio App.3d 71 (1983) (10th Dist.). (Claimant injured after three weeks on new job should not see AWW set by division into 52 weeks.) The Supreme Court of Ohio has also preferred the forward-looking emphasis in AWW, noting that a claimant who worked three weeks before the date of injury could benefit from a special-circumstances determination on AWW. *State ex rel. Ohio State Univ. Hosp. v. Indus. Comm.,* 118 Ohio St.3d 170, 2008-Ohio-1969.

{¶ 57} Examination of these cases makes clear that the commission would not have committed an abuse of discretion had Berry presented her case from the outset along lines that conformed with the SHO's ultimate factual determination that Berry was (1) unable

to work for 46 weeks of the preceding year, and (2) prevented from working by reasons that would warrant applying a special calculation to effect substantial justice. Huntington further points out that the SHO's statement that Berry was unemployed because she was caring for an ill family member, but continued to look for full-time employment during this period, is entirely fanciful and supported by no assertion, evidence, or argument from Berry at any point in the proceedings.

{¶ 58} The question before this court, therefore, is whether the commission, having disregarded Berry's primary line of argument, nonetheless had discretion to examine those aspects of the evidence that the commission found credible, and based thereon depart from the standard calculation of AWW. In sum, Huntington argues that the non-credible grounds asserted by Berry would preclude any other grounds invoked by the commission upon that portion of the evidence that the commission did find credible.

{¶ 59} In the final analysis, it is difficult to find that the commission abused its discretion when it attempted to comply with *Huff, Riley, Mattscheck*, and *Ohio State University Hospital* in departing from the standard AWW calculation to provide substantial justice to the claimant by applying a forward-looking emphasis on the lost wages. The commission could have, but did not, disregard various testimony that she was caring for her mother-in-law for most of the year, even when the commission disregarded the adjunct testimony that Berry was paid to do so. While Huntington objects to what it views as factual distortion in the application process leading to an excessive AWW computation in favor of the claimant, the commission is not obligated to punish a party for non-credible evidence, and may reach its result based on the evidence it finds credible and the proper application of law. The magistrate finds that there is some evidence to support the commission's decision to depart from the standard AWW calculation in R.C. 4123.61 and apply the special-circumstances exception to divide Berry's prior-year income only by the six weeks she worked for Huntington, which generated the entirety of that income. It is accordingly the decision and recommendation of the magistrate that the court deny the requested writ of mandamus.

/S/ MAGISTRATE
MARTIN L. DAVIS

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).